UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA SUMMERS, | ) |
| Plaintiff, | ) ) |
| | ) 13 C 1312 |
| v. | ) |
| | ) Judge George M. Marovich |
| ELECTRO-MOTIVE DIESEL, INC. | ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

After defendant Electro-Motive Diesel, Inc. ("EMD") terminated her employment, plaintiff Patricia Summers ("Summers") filed a complaint in which she alleged that defendant discriminated against her on the basis of her sex (Count I), race (Count II) and age (Count III) in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"). Defendant has moved for summary judgment, and plaintiff has moved for leave to include extra facts in her statement of facts. For the reasons set forth below, the Court grants plaintiff's motion and denies defendant's motion for summary judgment.

### I. Background

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the

fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of its duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

The Local Rule also limits the number of facts each party may put before the Court. Absent leave of court, the Local Rule limits moving parties to 80 facts and non-moving parties to 40 facts. *See* Local Rule 56.1. Plaintiff has filed a motion for leave to file a statement of facts that includes 70 facts. Where, as here, the non-moving party is the party with the burden of proof, the Court is more sympathetic to the need to include more than 40 facts. Although plaintiff should have filed her motion sooner, the Court will grant the motion for leave to file a statement of facts with greater than 40 facts.

The following facts are undisputed unless otherwise noted.

Plaintiff Summers, a black woman with a high-school education, was about 22 years old when she began working for EMD in April 1972. By the time EMD terminated her employment in late 2012, Summers had worked for EMD for more than forty years. During her time at EMD, Summers performed a number of jobs. For the last fifteen years of her employment, Summers performed the duties of a job that would eventually (for the last few years of her employment) be titled International Logistics and Transportation Analyst.

For most of her time at EMD, Summers's supervisors liked her work. Gary Bates supervised Summers for at least 25 years, and he gave Summers high scores on her performance reviews. For most of Summers's last three years at EMD, Summers reported to Robert Hennigan

("Hennigan"), EMD's Global Logistics Leader.  Hennigan mostly gave Summers high scores on her performance reviews.

That changed after EMD hired two employees who were philosophically opposed to high scores on performance reviews.  In 2010, EMD hired Dan Hanback ("Hanback") as Chief Operating Officer.  Hanback told his staff that he did not want employees to score the highest-possible rating on performance reviews.  In late 2011, EMD hired Paul Strimaitis ("Strimaitis") as its Global Supply Chain and Logistics Manager.  When Strimaitis started, he reviewed the performance evaluations for his team and was surprised that the ratings were so high, given that the team as a whole had not met its performance goals.  Strimaitis met with his managers to discuss whether the reviews were appropriate.  After the meeting, Hennigan changed Summers's rating from "superior" to "average."  When Summers asked Hennigan why, Hennigan told Summers it was because Strimaitis had told him to lower it.

Another thing Strimaitis did when he first started at EMD was request the personnel files of all of his team members.  In late 2011 or early 2012, Strimaitis told Hennigan that the department was "too old" and that he wanted to bring in younger employees.  By May 2012, Strimaitis had discharged Hennigan, who was, himself, over the age of 40.

Summers's new supervisor was Jennifer McNeill, who began working for EMD as its Manager of Global Logistics and Transportation in May 2012.  McNeill reported to Strimaitis.

On August 2, 2012, for reasons that are not made clear in the record, Summers emailed the human resources department and asked for a copy of her job description.  Human resources forwarded the email to McNeill.  McNeill, made two changes to the job description--she eliminated one of the job's responsibilities and changed the educational requirement from "B.S.

degree or equivalent training" to "B.S. degree"--and then emailed it to Summers. When Summers asked McNeill if she was no longer responsible for performing the eliminated responsibility, McNeill added the responsibility back to the job description and sent a copy to Summers.

Days later, Summers saw a job posting at EMD for a position called "International Transportation and Logistics Analyst" with the same description that McNeill had sent Summers. Summers asked McNeill if she were being replaced. McNeill told Summers that McNeill was trying to "relieve some of the workload off Patti Summers' desk" but that she was not trying to replace Summers. By August 20, 2012, EMD had filled the position with Matthew Meyers, a 27-year-old white man.

It was not clear to Summers how she was to share her workload with Meyers. On August 23, 2012, Summers emailed McNeill to ask to attend the same meetings as Meyers. McNeill responded that Summers could attend some but not all of Meyers's meetings. In September, Summers asked McNeill how the work should be divided between herself and Meyers. McNeill said, "Patti, we pay you too much money. I'm not going to sit here and monitor your day-to-day job. You and Matt figure it out." Summers approached Meyers, and they got into what other employees described as a heated and argumentative (though not loud) discussion. Meyers told Summers, "Well, Patti, Jennifer is the boss. If she says do, I'm going to do." Two other employees reported the conversation to McNeill.

Soon, McNeill made the division of labor more explicit by transferring to Meyers certain of Summers's responsibilities. For example, McNeill transferred to Meyers what had been Summers's responsibilities with respect to a plant in Brazil. McNeill also transferred to Meyers

what had been Summers's responsibilities for working with freight forwarders, approving freight forwarding bills and attending Compliance Department meetings. Summers's workload decreased significantly.

In late September/early October, Summers was out of the office for an unspecified (in the record, anyway) period of time due to her father's funeral, her brother's cancer surgery and her deposition testimony on behalf of EMD in a case unrelated to this one. Summers informed Meyers that she would be gone, set up her email to notify (automatically) people who emailed her that they should direct their questions to Meyers, and forwarded all of her email to Meyers. After Summers's return, McNeill learned that Summers had 342 unread emails in her inbox.

Days earlier, on October 9, 2012, McNeill had a meeting with Summers. Over the last few months, McNeill had heard from nine EMD employees that they had had difficulty working with Summers. During their meeting, McNeill told Summers that she needed to work on her interpersonal skills. McNeill told Summers she needed to "get on board and be a team player." After that, nobody reported any additional incidents to McNeill.

At about the same time, McNeill was asked (by whom, the parties do not say) to rank the employees in the Transportation Group. Between late 2012 and late 2013, EMD conducted a company-wide reduction in force. In all, 57 employees lost their jobs over the course of that year. When McNeill ranked her staff--on the basis of job knowledge, results, responsiveness and ability to work with others, not on the basis of sex, age or race--she put Summers at the very bottom. McNeill decided to terminate Summers's employment. McNeill told Strimaitis her decision and discussed with him the reasons she wanted to terminate Summers's employment.

On November 2, 2012, the human resources department emailed to McNeill "talking point" that she could use when she informed Summers that she was terminating her employment. The talking points included, "I am sorry to tell you that I have decided that your skill set is not one that I want to retain going forward." The email made no reference to a reduction in force and did not say that the position had been eliminated. When McNeill met with Summers to tell her that her employment with EMD was over, McNeill told Summers that the reason she was being terminated was that she did not have the skill-set for the position. McNeill did not tell Summers she was losing her job as part of a reduction in force.

After Summers was discharged, McNeill learned that there was a significant amount of work left to be done. Meyers's workload increased, but he was not given additional responsibilities. By April 2013, EMD had hired Paulina Pinto ("Pinto") (who was under the age of 40) as an International Transportation and Logistics Analyst. Pinto has an MBA. The parties dispute whether Pinto's job was the same as Summers's job (though it clearly had the same title). Plaintiff put forth evidence (Meyers's testimony) that Meyers and Pinto were doing the same job Summers had done, while defendant put forth evidence (McNeill's testimony) that Pinto had the additional duties of "working with cross-functional teams to solve problems," compiling reports and providing analytics.

## II. Summary Judgment Standard

Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III. Discussion

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The Age Discrimination in Employment Act makes it "unlawful for an employer--(1) to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

The parties devote the overwhelming majority of their briefs to plaintiff's claim that she was discharged due to her age. The Court first considers plaintiff's claim of age discrimination under the indirect method. To make out a *prima facie* case of discrimination, a plaintiff must put forth evidence that: (1) she is a member of a protected class; (2) she was meeting the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) a similarly-situated employee not in her protected class was treated more favorably. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). The "burden of establishing a prima facie case

of disparate treatment is not onerous." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). It requires a plaintiff to show that he was "rejected under circumstances which give rise to an inference of unlawful discrimination," and the "standard is not inflexible" because facts vary in different cases. *Burdine*, 450 U.S. at 253 and n.6.

Here, Summers has put forth evidence that she was discharged under circumstances that give rise to an inference of unlawful age discrimination. Plaintiff, who was over the age of 60 when she was discharged, had, for at least 25 years, received high scores on her performance reviews. That changed after EMD hired Strimaitis, who told plaintiff's supervisor, Hennigan, that the team was "too old." After Hennigan reduced Summers's rating from "superior" to "average," Hennigan told plaintiff the reason for the change was that Strimaitis had told him to lower it. This is enough to show plaintiff was meeting her employer's legitimate expectations, even if a history of strong performance reviews is not enough in every case. Next, it is undisputed that less than three months before plaintiff was discharged, EMD hired Meyers, who was more than 30 years younger than she was, to do the same job she was doing. Plaintiff's supervisor told her Meyers was hired to take some of the workload off of plaintiff's desk. Immediately after plaintiff was discharged, Meyers's workload increased. Soon, EMD hired Paulina Pinto (who was also at least twenty years younger than plaintiff) as International Transportation and Logistics Analyst (the same title Meyers held and that plaintiff had held). Plaintiff has put forth disputed evidence that once Pinto was hired, Pinto performed the same job Meyers was doing and that plaintiff had done. In other words, plaintiff was replaced by two people, both of whom were significantly younger than she. Defendant argues that Pinto and Meyers are not similarly-situated to plaintiff, because they were more educated and, thus, better

qualified. This argument is a red herring. Pinto and Meyers are similar-situated to plaintiff, because there is evidence that they did the same job as plaintiff for the same supervisor that supervised plaintiff. If Pinto and Meyers were better qualified, then defendant can offer that as the legitimate reason why Pinto and Meyers were chosen over plaintiff; but it does not mean Pinto and Meyers are not similarly-situated to plaintiff for purposes of making out a *prima facie* case. Plaintiff has shown she lost her job under circumstances that create an inference of unlawful age discrimination; plaintiff has made out a *prima facie* case of age discrimination.

Where, as here, a plaintiff makes out a *prima facie* case of discrimination, defendant has the light burden of *articulating* a legitimate, non-discriminatory reason for the adverse action. *Alexander*, 739 F.3d at 979. If defendant does so, plaintiff can survive summary judgment by showing that the proffered reason was just a pretext for discrimination. *Id.* A pretext is a dishonest explanation, rather than an error. *See Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009).

Defendant has put forth evidence that it discharged plaintiff, because it eliminated her position as part of a reduction in force. Plaintiff argues that this explanation is a pretext for age discrimination, and the Court agrees that plaintiff has put forth enough evidence from which a jury could conclude that defendant's reason is a pretext. First, defendant's explanation for Summers's discharge has been inconsistent. *Baker v. Macon Resources, Inc.*, 750 F.3d 674, 677 (7th Cir. 2014) ("a jury may reasonably infer pretext from flagrant inaccuracies or inconsistencies in an employer's proffered reason for an employment decision."). Defendant's explanation for Summers's discharge is a reduction in force, but that is not what defendant told Summers. On the day Summers was discharged, the human resources department gave McNeill

"talking points" for her discharge conversation with Summers. The talking points did not mention a reduction in force. Instead, human resources suggested McNeill tell Summers "I am sorry to tell you that I have decided that your skill set is not one that I want to retain going forward." When McNeill actually spoke to Summers, McNeill said nothing about the reduction in force. Instead, McNeill told Summers she lacked the skill set for the position.

Plaintiff has also put forth other evidence from which a jury could find pretext. Plaintiff has put forth evidence that in late 2011 or early 2012, Strimaitis told Hennigan that the department was "too old" and that he wanted to bring in younger employees. Defendant dismisses this as a stray remark by someone who did not make the decision to discharge plaintiff. But Strimaitis was McNeill's supervisor, and it is undisputed that McNeill discussed her decision with Strimaitis. Furthermore, a jury could conclude that McNeill's testimony that Summer's "position was eliminated in the RIF" was a lie based on the evidence that McNeill hired Meyers to do the same work as Summers three months before Summers's position was "eliminated" and hired Pinto to do the same work a few months after.

Plaintiff has put forth enough evidence from which a reasonable jury could find in her favor on her age discrimination claim. Defendant's motion for summary judgment is denied as to Count III.

Defendant also moves for summary judgment with respect to plaintiff's race and sex discrimination claims, which both parties treat as afterthoughts. Neither party devotes much space to these claims, which means the Court has nothing of substance to decide unless the Court makes the parties' arguments for them. Accordingly, the Court denies defendant's motion for summary judgment as to Counts I and II. This is, of course, a victory for plaintiff, but plaintiff

might consider the merits of Counts I and II relative to the merits of Count III. Summers worked for EMD for more than forty years, during which time neither her sex nor her race changed. Only her age changed. This may be an occasion when it is better to shoot with a rifle than with a shotgun.

## IV. Conclusion

For the reasons set forth above, the Court grants plaintiff's motion [115] for leave and denies defendant's motion [98] for summary judgment.

ENTER:

George M. Marovich
United States District Judge

DATED: May 19, 2015